UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  2:26-cr-00046 TLN |
| Plaintiff, | |
| v. | ORDER |
| JOSHUA CRANWELL, | |
| Defendant. | |

**INTRODUCTION**

On May 29, 2026, the undersigned heard Defendant Joshua Cranwell's motion for bail review.  ECF No. 19.  Cranwell is charged by indictment with being a felon in possession of a firearm.  ECF No. 10.  Magistrate Judge Allison Claire previously ordered Mr. Cranwell detained. But Mr. Cramwell has now furnished new information material to Court's inquiry under the Bail Reform Act ("BRA").  For the reasons provided below, the undersigned finds that the danger he may otherwise pose to his spouse can be mitigated by conditions including a requirement that he reside in a different home than her, a "no contact" order, and GPS location monitoring.  Where a danger to the community or a particular person can be adequately mitigated by such conditions, the BRA mandates release.  Mr. Cranwell's motion is GRANTED and he is ordered released on the conditions identified below, which will also be provided to Mr. Cranwell by his counsel and the Pretrial Services Office upon his release.

1

At the hearing on May 29, 2026, the government requested that the Court stay any release order it might issue to allow the government to seek review of the release order under 18 U.S.C. § 3145(a).  The government did not identify any factors that would warrant a stay.  And the undersigned does not see how the government could show irreparable harm warranting a stay where the government has not identified exigent circumstances and Mr. Cranwell will be released on GPS monitoring and can be readily contacted should the release order be revoked by the District Judge.  However, for the sake of the orderly administration of proceedings in this Court, the undersigned will delay Mr. Cranwell's release until 1 p.m. on June 2, 2026 to allow the government to seek a stay from the District Judge.

**PROCEDURAL HISTORY**

Mr. Cranwell was originally charged with a violation of 18 U.S.C. § 922(g) in a complaint filed on March 16, 2026.  ECF No. 1.  The affidavit filed in support of the complaint alleges, in relevant part, that on February 18, 2026, Calaveras County Sheriff's Deputies responded to a reported domestic violence incident at Mr. Cranwell's residence.  *Id.*, ¶ 5.  "Victim 1"—Mr. Cranwell's spouse—reported that over the course of the previous night and that morning, Mr. Cranwell tried to force his way past a door towards Victim 1, knocked the door off its hinges, and caused the door to strike the bridge of Victim 1's nose.  *Id.*, ¶ 7.  The affidavit further details that the Calaveras County Sheriff's Office has "documented approximately nine domestic violence incidents between CRANWELL at Victim 1" from 2016 to the present.  *Id.*, ¶ 6.  The Deputies arrested Mr. Cranwell.  *Id.*, ¶ 9.  They then obtained a search warrant for the primary residence and for a cabin on the property where Mr. Cranwell had been located when the Deputies arrived.  *Id.*, ¶ 10.

During the search of the cabin, a Deputy found "indicia for Cranwell on the first level of the CABIN"—apparently pieces of mail addressed to him—and found ammunition and a Remington UMC pistol in containers in a cabinet on the second level of the cabin.  *Id.*, ¶ 11.  Based on the location of the firearm and Mr. Cranwell's 2005 felony conviction for possession of marijuana for sale, California Health & Safety Code § 11359, the government charged Mr. Cranwell with a violation of 18 U.S.C. § 922(g).

2

Mr. Cranwell made his initial appearance in federal court on March 25, 2026 before Magistrate Judge Claire, and requested that his detention hearing be continued to the next day. ECF No. 4.  At the continued detention hearing on March 26, 2026, Magistrate Judge Claire heard extensive argument from the parties before ultimately ordering Mr. Cranwell detained. ECF Nos. 8.  The Pretrial Services Report prepared in advance of the detention hearing noted the history of reported domestic violence between Mr. Cranwell and his wife, including a reported protective order entered against Mr. Cranwell by the Calaveras County Superior Court on February 23, 2026.  Magistrate Judge Claire's written detention order included the following as the reasons for detention: "History of violence or use of weapons[,]" "The defendant's release poses serious danger to any person or the community[,]" and "history of domestic violence, member of outlaw motorcycle gang."  ECF No. 9 at 3.

The undersigned listened to the recording of the March 26 detention hearing.  Relevant to the analysis below, defense counsel indicated that the state court protective order had likely been lifted, but that Mr. Cranwell would abide by any federally-imposed "no contact" condition with his wife.  Defense counsel also pushed strongly for the imposition of a "*Vaccaro* bond" which would result in the forfeiture of any bond amount imposed where Mr. Cranwell to violate any conditions of release.  However, Magistrate Judge Claire noted that a *Vaccaro* bond to prevent contact between Mr. Cranwell would "invite all kinds of problems," since it would incentivize Mr. Cranwell's wife to not report, or to minimize, any violations of a no contact order. Magistrate Judge Claire's predominant concern at the March 26 detention hearing was the safety of Mr. Cranwell's wife.

The indictment charging Mr. Cranwell with a violation of § 922(g) was filed on April 9, 2026.  ECF No. 10.

On April 24, 2026, Mr. Cranwell filed a motion for reconsideration of Magistrate Judge Claire's detention order.  ECF No. 16.  Magistrate Judge Claire denied that motion the same day, noting, *inter alia*, that review of detention orders should be made under § 3145, not through a motion for reconsideration, and that "there was no manifest error of law" in its finding that "the proposed bond package was inappropriate on the facts of the case."  ECF No. 17.

On May 23, 2026, Mr. Cranwell filed the instant motion for bail review.  ECF No. 19.  Mr. Cranwell identified the need to support his minor daughter, who gave birth on March 15, 2026, and to support his wife after imminent neck and spine surgeries.  On May 27, 2026, the government filed an opposition to the motion.  ECF No. 20.  The undersigned heard extensive argument on the motion on May 29, 2026, at which time Mr. Cranwell shared that his daughter's child (his grandchild) had passed away that morning.  At the conclusion of the hearing, the undersigned took the matter under submission.  ECF No. 21.

**ANALYSIS**

### I.   Reopening the Detention Hearing is Warranted

A detention hearing may be reopened "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f).  While the government opposes Mr. Cranwell's release under the § 3142(g) factors, see ECF No. 20 at 3-8, the government does not specifically argue Mr. Cranwell has not presented new, material information.  At the hearing on May 29, Mr. Cranwell contended that the defense's showing that the state court protective order has been lifted and Mr. Cranwell's new family circumstances are sufficient to warrant reopening.  The undersigned agrees.  The undersigned now turns to the § 3142(g) factors.  *See United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991) (reviewing anew the § 3142(g) factors upon reopening under § 3142(f)).

### II.   The § 3142(g) Factors Demonstrate that Defendant May Pose a Danger to His Wife But that Such Danger Can be Adequately Mitigated by a No Contact Order, Separate Residences, and GPS Monitoring

In determining whether to order release or continued detention, the Court must weigh the factors under § 3142(g), while keeping in mind that "doubts regarding the propriety of release be resolved in favor of the defendant."  *See United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405-06 (9th Cir. 1985)).

The undersigned finds that the government has not shown by a preponderance of the evidence that Mr. Cranwell presents a risk of non-appearance.  *See Motamedi*, 767 F.2d at 1407

4

(holding that the government must show risk of non-appearance by a preponderance of the evidence).  Mr. Cranwell has no reported failures to appear and successfully completed 36 months of probation on his sole conviction from more than two decades ago.  Moreover, as noted below, Mr. Cranwell has expressed an intent to mount a vigorous defense, including through a motion to suppress currently scheduled to be heard in July 2026 and through a state court motion to reduce his felony marijuana conviction to a misdemeanor.  Moreover, any hypothetical risk of flight would be adequately mitigated by the GPS monitoring that the Court is imposing.  No bond is necessary to secure Mr. Cranwell's appearance at future proceedings.

The undersigned does find that Mr. Cranwell may pose a risk to his wife.  However, as explained below, given the strict conditions the Court is imposing and Mr. Cranwell's current family circumstances, the government has not shown by "clear and convincing evidence" that there are no "combination of conditions" that "will reasonably assure the safety" of Mr. Cranwell's wife.[1]  18 U.S.C. § 3142(f); *see also United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) ("A finding that a defendant is a danger to any other person or the community must be supported by clear and convincing evidence.") (quotations omitted).

### A.    Nature and Circumstances of the Offense

The first factor is "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device[.]"  18 U.S.C. § 3142(g)(1).  While the enumeration of "firearm" under this factor suggests firearm cases require special attention, there is nothing aggravating about the nature and circumstances of Mr. Cranwell's alleged offense.  Unlike many individuals charged with §922(g) in this District, Mr. Cranwell does not have a history of firearm-related violent crime.  His only conviction of any kind was for possessing marijuana for sale.  While Mr. Cranwell's history of domestic violence contacts are concerning in light of the alleged firearm possession, there are no allegations that Mr.

---

[1]  While Mr. Cranwell's reported membership in the Hells Angels presents some additional possible concerns, there are no reports of him engaging in criminal conduct with that group.  Moreover, the home detention condition will prevent him from participating in Hells Angels activities while on pre-trial release.

Cranwell ever used or threatened to use a firearm in connection with a domestic violence incident. Moreover, the firearm was not at the ready, but rather was in a leather holster within a "black, rounded case" inside an upstairs cabinet in a cabin where Mr. Cranwell was reportedly staying. ECF No. 1, ¶ 11. Such a circumstance naturally presents less danger than when a prohibited person brings a firearm out into spaces with other people.

The government describes the alleged domestic violence incident reported on the morning of February 18, 2026 and Mr. Cranwell's Hells Angels membership under this factor. ECF No. 20 at 4-5. However, there are no allegations that the gun played any role in the domestic violence incident or that Mr. Cranwell ever possessed or used the gun in connection with any Hells Angels activities. Accordingly, the undersigned does not believe that these facts are properly considered as part of the nature and circumstances of the offense, for purposes of BRA analysis.

## B.    Weight of the Evidence

The second factor is "the weight of the evidence against the person[.]" 18 U.S.C. § 3142(g)(2). The government contends that the weight of the evidence against Mr. Cranwell is "overwhelming," given that the firearm was found in a "small cabin on his property" and he "was the exclusive resident of the cabin." ECF No. 20 at 5. Mr. Cranwell nonetheless intends to mount a vigorous defense to the charge and argued at the March 26 detention hearing that he was not aware the firearm was in the cabinet. At this point, there is no direct evidence in the record that Mr. Cranwell knew that the firearm or ammunition (both found within other containers) was in the cabinet in the cabin. Mr. Cranwell's wife also reported to law enforcement officials that the firearm belonged to Mr. Cranwell's father, ECF No. 1, ¶ 12, and has submitted a sworn declaration that "[n]either Joshua nor I knew that it was there in his father's loft area," ECF No. 19-1, ¶ 3. While Mr. Cranwell's wife's other statement that "Joshua does not go into his father's cabin[,]" is not credible, see ECF No. 1, ¶¶ 9, 11, the broader point is that there is apparently a colorable lack-of-knowledge defense to the charge. Moreover, counsel for Mr. Cranwell represented that Mr. Cranwell is in the process of seeking to reduce his felony conviction to a misdemeanor, a process which—if successful—would apparently require the dismissal of the charge against him. While the Ninth Circuit has repeatedly stated that this is the "least important"

of the factors under § 3142(g), *see Motamedi*, 767 F.2d at 1408, logic dictates that the existence of apparently colorable defenses will incentivize Mr. Cranwell's compliance with conditions of release.

### C.    Mr. Cranwell's History and Characteristics

The third factor is the defendant's "history and characteristics," including:

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]

18 U.S.C. § 3142(g)(3).

In this case, the most relevant history and characteristics as they pertain to danger are the persistent alleged domestic violence encounters between Mr. Cranwell and his wife, which are addressed more thoroughly below.  Otherwise, Mr. Cranwell's criminal history is minimal. Moreover, Mr. Cranwell's current "family ties," indicate that conditions can be fashioned that will reasonably ensure the safety of Mr. Cranwell's wife.  Given the recent tragedy of the death of Mr. Cranwell's newborn grandchild, Mr. Cranwell intends to serve as a support for his daughter, which should incentivize him to follow conditions of release in order to avoid being sent back to pre-trial detention.  Moreover, given Mr. Cranwell's wife's imminent spinal surgery, she will reportedly be incapacitated for several months and unable to travel to Mr. Cramwell's separate residence of release.  Finally, Mr. Cranwell was not on any supervision at the time of the alleged offense and in fact successfully completed 36 months of probation as to his only conviction.

### D.    Nature and Seriousness of the Danger Posed to Mr. Cranwell's Wife

The Court must also consider the nature and seriousness of the danger posed by Mr. Cranwell "to any person or the community that would be posed by the person's release[,]" which in this case involves a focus on the danger posed to Mr. Cranwell's wife.  18 U.S.C. § 3142(g)(4). The Calaveras County Sheriff's Office has "documented approximately nine domestic violence incidents between Cranwell" and his wife since 2016.  ECF No. 1, ¶ 6.  Just as it was for

Magistrate Judge Claire, this is of paramount concern for the undersigned.

Mr. Cranwell has proposed that he, or he and his wife, co-sign a "*Vaccaro* bond," which would be forfeited if he were to violate a condition of release.[2]  However, that would create a perverse and dangerous incentive structure whereby Mr. Cranwell and his wife might seek to minimize or cover up any violation conduct—including a further domestic violence incident—in order to avoid having to forfeit thousands of dollars.  The Court accordingly rejects the defense's *Vaccaro* bond proposal.  However, if conditions can still be fashioned that will reasonably ensure the safety of Mr. Cramwell's wife, the BRA requires he be released on such conditions.

The Court finds that Mr. Cranwell should be released subject to supervision by the Pretrial Services Office and under the following conditions:

1. Your release on bond is delayed until **June 2, 2026, at 1:00 pm** at which time you will report to the Pretrial Services Agency for the installation of the location monitoring equipment;

2. You must report to and comply with the rules and regulations of the Pretrial Services Agency;

3. You must cooperate in the collection of a DNA sample;

4. You must restrict your travel to **Eastern District of California** unless otherwise approved in advance by the pretrial services officer;

5. You must not apply for or obtain a passport or any other travel documents during the pendency of this case;

6. You must not possess, have in your residence, or have access to a firearm/ammunition, destructive device, or other dangerous weapon; additionally, you must provide written proof of divestment of all firearms/ammunition currently under your control;

7. You must report any contact with law enforcement to your pretrial services officer within 24 hours;

_____

[2]  *United States v. Vaccaro*, 51 F.3d 189 (9th Cir. 1995), affirmed the forfeiture of a bail bond for violations of pre-trial conditions of release, including a condition not to violate any law, as long as the parties to the bond agreed to such a condition.

8. You must not use or possess any narcotic drug or other controlled substance without a prescription by a licensed medical practitioner; and you must notify Pretrial Services immediately of any prescribed medication(s). However, medicinal marijuana prescribed and/or recommended may not be used;

9. You must not associate or have any contact with any known gang members unless in the presence of counsel;

10. You must not have any in person contact with Reanna Cranwell;

11. You must reside at a location approved by the pretrial services officer and not move or absent yourself from this residence for more than 24 hours without the prior approval of the pretrial services officer;

12. You must seek and/or maintain employment and provide proof of same as requested by your pretrial services officer;

13. You must not use or possess any narcotic drug or other controlled substance without a prescription by a licensed medical practitioner; and you must notify Pretrial Services immediately of any prescribed medication(s). However, medicinal marijuana prescribed and/or recommended may not be used;

14. You must submit to drug and/or alcohol testing. You must pay all or part of the costs of the testing services based upon your ability to pay, as determined by the pretrial services officer. You must not tamper, obstruct, or attempt to tamper or obstruct the efficiency and accuracy of the drug screening/testing;

15. You must participate in a program of medical or psychiatric treatment, including treatment for drug or alcohol dependency, or individual specialized treatment, as determined by the pretrial services officer. You must pay all or part of the costs of the counseling services based upon your ability to pay, as determined by the pretrial services officer;

16. You must participate in the following location monitoring program component and abideby all the requirements of the program, which will include **a location monitoring technology as directed by the pretrial services officer.** You must comply with all

9

instructions for the use and operation of the location monitoring technology as given to you by the Pretrial Services Agency and employees of the monitoring company. You must pay all or part of the costs of the program based upon your ability to pay, as determined by the pretrial services officer; and

17. **HOME DETENTION:** You must remain inside your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court ordered obligations; or other essential activities pre-approved by the pretrial services officer.[3] Essential activities include haircuts, DMV appointments, banking needs, or other activities that cannot be completed by another person on your behalf.

In particular, the "no contact" order between Mr. Cranwell and his wife, the fact that Mr. Cranwell will be residing some distance from his wife, and GPS locational monitoring will—along with the other conditions—reasonably ensure that Mr. Cranwell and his wife will not encounter each other.

At the hearing, the government doubted that Mr. Cranwell would follow conditions the Court might impose. However, "imagin[ing] the ways that [the defendant] might circumvent supervision and computer monitoring … [is] speculative and could be applied to anyone facing the same charges. No set of release conditions is foolproof. Further, the [Bail Reform] Act requires only 'reasonable assurance,' and not a 'guarantee.'" *United States v. Anders*, No. 2:23-cr-00046-TL, 2023 WL 4028055, at *5 (W.D. Wash. June 15, 2023) (*citing United States v. Orta*, 760 F.2d 887, 891-92 (8th Cir. 1985)). Moreover, the BRA standard is not an "ironclad guarantee[]," *Chen*, 820 F. Supp. at 1208, but simply, "reasonable assurance" that the defendant will not pose a danger, *United States v. Djoko*, No. 19-cr-0146, 2019 WL 4849537, at *5 (W.D. Wash. Oct. 1, 2019) ("While these conditions [of release] cannot guarantee [defendant's] appearance, the standard under § 3142(g) is reasonable assurance."). The conditions imposed provide such reasonable assurance of Mr. Cranwell's wife's safety under the circumstances.

---

[3] These may include visits with your daughter to support her after the loss of her child.

**III.    Stay of Release Order**

At the hearing on May 29, the government requested that the undersigned stay any release order it might issue in order to allow the government to seek review by the District Judge under § 3145(a).  The Bail Reform Act does not itself contain a provision addressing the stay of a detention order.  *See United States v. Abass*, 2025 WL 1096795, at *2 (D.D.C.) (finding no statutory basis for a stay pending appeal).  Courts to have considered the question apply the four-factor *Nken v. Holder,* 556 U.S. 418 (2009), framework that applies to stay requests generally.  Those factors are: "1) [a] strong showing of success on the merits of the appeal, 2) irreparable harm to the moving party, 3) substantial injury to other interested parties, and 4) the public interest."  *United States v. Pavlon-Andino*, 2025 WL 446143 (D. Colo.) (denying stay of magistrate judge release order for failure to demonstrate that *Nken* factors are met); *see also Abass*, 2025 WL 1096795, at *3-5 (denying request for a stay of release order under application of *Nken* factors); *United States v. Manobanda-Leon*, No. 2:25-cr-47-EWH-RJK, ECF No. 23 (E.D. Va. May 1, 2025) (same).

The party seeking a stay must show that "irreparable harm is probable[.]" *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011). "[S]tays must be denied to all petitioners who [do] not meet the applicable irreparable harm threshold, regardless of their showing on the other stay factors." *Id*. at 965 (citation omitted).  At the hearing, the government did not argue irreparable harm.  Nor can the undersigned conceive of irreparable harm.  The undersigned is ordering Mr. Cranwell released on strict conditions, including GPS monitoring.  There are no exigent circumstances like a risk of flight or an intention by Mr. Cranwell to engage in other criminal activity.  Accordingly, even if the District Judge were to overturn the release decision, Mr. Cranwell could be easily contacted and taken back into custody.

Accordingly, the undersigned denies the government's request for a stay of this order.  However, federal courts do often enter brief administrative stays in order to ensure the orderly administration of justice.  *See Nat'l Urban League v. Ross*, 977 F.3d 698, 700–01 (9th Cir. 2020) ("[A]n administrative stay is only intended to preserve the status quo until the substantive motion for a stay … can be considered on the merits.") (internal quotation marks omitted).  Here, the

11

undersigned effectively grants a brief administrative stay by delaying the time of Mr. Cranwell's release to 1 p.m. on June 2, 2026, in order to allow the government to seek a stay of release and review of this order from the District Judge.

## CONCLUSION

Mr. Cranwell's motion for bail review is GRANTED and he is ordered released on the identified conditions, including the condition that his release be delayed until 1 p.m. on June 2, 2026.

Dated: June 1, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE