UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSHUA CRANWELL,

Defendant.

No. 2:26-cr-00046-TLN

**ORDER**

This matter is before the Court on the Government's Motion to Revoke the Magistrate Judge's Order Authorizing Defendant Joshua Cranwell's ("Defendant") Pretrial Release.  (ECF No. 25.)  Defendant did not file an opposition.  For the reasons set forth below, the Court GRANTS the Government's motion.

///

///

///

///

///

///

///

///

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On March 16, 2026, the Government filed a Criminal Complaint charging Defendant with felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  (ECF No. 1.)  U.S. Magistrate Judge Sean C. Riordan summarizes the affidavit filed in support of the complaint as follows:

> [O]n February 18, 2026, Calaveras County Sheriff's Deputies responded to a reported domestic violence incident at [Defendant's] residence.  [ECF No. 1], ¶ 5.  "Victim 1"—[Defendant's] spouse— reported that over the course of the previous night and that morning, [Defendant] tried to force his way past a door towards Victim 1, knocked the door off its hinges, and caused the door to strike the bridge of Victim 1's nose.  *Id.*, ¶ 7.  The affidavit further details that the Calaveras County Sheriff's Office has "documented approximately nine domestic violence incidents between [Defendant] a[nd] Victim 1" from 2016 to the present.  *Id.*, ¶ 6.  The Deputies arrested [Defendant].  *Id.*, ¶ 9.  They then obtained a search warrant for the primary residence and for a cabin on the property where [Defendant] had been located when the Deputies arrived.  *Id.*, ¶ 10.
>
> During the search of the cabin, a Deputy found "indicia for [Defendant] on the first level of the CABIN"—apparently pieces of mail addressed to him—and found ammunition and a Remington UMC pistol in containers in a cabinet on the second level of the cabin.  *Id.*, ¶ 11.  Based on the location of the firearm and [Defendant's] 2005 felony conviction for possession of marijuana for sale, California Health & Safety Code § 11359, the government charged [Defendant] with a violation of 18 U.S.C. § 922(g).

(ECF No. 22 at 2.)

On March 25, 2026, at the Initial Appearance, defense counsel requested to continue the detention hearing to the next day.  (ECF No. 4.)  On March 26, 2026, U.S. Magistrate Judge Allison Claire ordered Defendant detained.  (ECF Nos. 8, 9.)   In her order, Judge Claire noted the reasons for detention include "history of violence or use of weapons," Defendant's "release poses serious danger to any person or the community," "history of domestic violence," and "member of outlaw motorcycle gang."  (ECF No. 9 at 3.)

On April 9, 2026, the grand jury returned a one-count Indictment charging Defendant with a violation of 18 U.S.C. § 922(g).  (ECF No. 10.)

On April 24, 2026, Defendant filed a motion for reconsideration of Judge Claire's detention order.  (ECF No. 16.)  Judge Claire denied the motion for reconsideration on the same

day, noting that "[r]eview of detention orders is governed by 18 U.S.C. § 3145," "the proposed bond package was inappropriate on the facts of the case," and "[t]here was accordingly no manifest error of law."  (ECF No. 17.)

On May 23, 2026, Defendant filed a motion for bail review that was set before U.S. Magistrate Judge Sean C. Riordan.  (ECF No. 19.)  After Judge Riordan held a hearing on the motion (ECF No. 21), he issued a written order on June 1, 2026, granting Defendant's motion and ordering Defendant released on identified conditions, including that his release be delayed until 1:00 p.m. on June 2, 2026 (ECF No. 22).

On June 1, 2026, the Government filed the instant motion to revoke Judge Riordan's release order, arguing there are no conditions that will reasonably assure the safety of any other person and the community.  (ECF No. 25.)  On June 2, 2026, this Court stayed Judge Riordan's June 1, 2026 order for 48 hours to allow the parties to fully brief the issue of whether Defendant shall be released from custody.  (ECF No. 26.)  Defendant did not file an opposition.

## II.   STANDARD OF LAW

"If a person is ordered released by a magistrate judge . . . the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release."  18 U.S.C. § 3145(a).  Under this provision, the district court conducts its own *de novo* review of the magistrate judge's detention order.  *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).  The district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference."  *Id.* at 1193.

Under the Bail Reform Act, courts may detain a defendant prior to trial only where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e); *see also United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).  When the Government seeks pretrial detention, it must establish by a clear preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985); *see also* 18 U.S.C.

3

§ 3142(f).  In determining whether the Government has met its burden, courts consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.  18 U.S.C. § 3142(g).

"Doubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1405; *see also United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).  Further, a court must release the defendant from pretrial detention under the least restrictive condition or combinations of conditions that will reasonably assure the appearance of the person and safety of the community.  *Motamedi*, 767 F.2d at 1405.

**III.    ANALYSIS**

The Government argues the 18 U.S.C. § 3142(g) ("§ 3142(g)") factors weigh against Defendant's release.  The Court addresses each of these factors in turn and then address whether Defendant is a flight risk.

A.    Nature and Circumstances of the Offense

The Government argues the instant charge arose after Defendant had a drug-fueled binge and assaulted his wife.  (ECF No. 25 at 6.)  Specifically, the Government states that deputies responded to an emergency phone call at about 8:47 a.m. on February 18, 2026, from Victim-1, who called to report she was hiding from her husband at their residence.  (*Id.*)  The Government notes the deputies who responded were aware of this residence because the Sheriff's Office had responded to about nine domestic violence incidents with Victim-1 and Defendant since 2016. (*Id.*)  The Government summarizes the incident as follows:

> According to Victim-1, during the previous evening (February 17), [Defendant] was using drugs and flew into an agitated state, as was common.  He locked himself in a cabin on the property (next to the main residence where Victim-1 and [Defendant's] elderly father live). In the early morning hours of February 18, [Defendant] reacted negatively to Victim-1's requests for assistance to bring firewood into the residence.  She heard him unlocking the internal locks on the cabin door.  She became scared and fled back to the residence.  She tried to close the entry door but [Defendant] prevented it from being closed and began to force his way into the house.  Eventually, [Defendant] caused the front door to be knocked off its hinges by

4

> applying substantial force.  The door flew off its hinges and smashed into with the bridge of Victim-1's nose, injuring her.  [Defendant] then retreated to the cabin.  At about 8:00 a.m., Victim-1 once again approached the cabin to ask [Defendant] for assistance.  This time, [Defendant] called her a "crackhead," "whore," and "bitch," and again began unlocking the padlocks on the cabin door.  Victim-1 again fled to the residence and called 911.

(*Id.* at 7.)  The Government states in a footnote that "[c]onsistent with Victim-1's account, deputies observed red bruising around the bridge of her nose and faint shadows under the inner corners of her eyes, which Victim-1 identified as likely bruises from the incident."  (*Id.* at 7 n.4.)  According to the Government, after a Calaveras County Superior Court judge issued a search warrant for the cabin, deputies discovered multiple USPS boxes addressed to Defendant in the first floor workshop area and, in a cabinet on the second floor, multiple rounds of ammunition and a Remington UMC pistol.  (*Id.* at 7–8.)  The Government provides a picture of a Hells Angels item displayed in the workshop area and states deputies discovered a structure that appeared to be a Hells Angels clubhouse (filled with a bar, meeting area, Hells Angels insignia, etc.).  (*Id.* at 8.)

In light of the foregoing and Defendant's non-opposition to the instant motion, the Court finds this factor weighs against release.

### B.    Weight of the Evidence Against Defendant

The Government argues the weight of the evidence is "overwhelming," as Defendant was residing in a small cabin on his property and was its exclusive resident.  (*Id.* at 9.)  The Government maintains that in the close quarters Defendant controlled, he knowingly possessed a weapon and an extensive amount of ammunition.  (*Id.*)  The Government challenges Judge Riordan's conclusion that this factor supports release as there is no direct evidence of Defendant's knowledge of the gun or ammunition in the cabinet.  (*Id.*)  Instead, according to the Government, the Ninth Circuit has clarified that a "jury must only find a connection between the defendant and the firearm or ammunition that is sufficient 'to support the inference that the defendant exercised dominion and control over' it," and in this case, a jury can make "the common-sense inference" Defendant possessed the firearm in his small cabin.  (*Id.* (quoting *United States v. Carrasco*, 257 F.3d 1045, 1049 (9th Cir. 2001)).)  The Government finally contends Judge Riordan's conclusion of "a colorable lack-of-knowledge defense to the charge" is unsupported by the record or

common-sense inferences and Judge Riordan's order does not cite any authority that would allow Defendant to reduce his felony conviction to a misdemeanor. (*Id.* at 10.)

Indeed, courts have held that the weight of the evidence against the person is the least important of all the § 3142(g) factors, but it is still relevant. *Motamedi*, 767 F.2d at 1407. The Court finds that the Government proffers substantial evidence against Defendant. Further, Defendant did not file an opposition to the instant motion. Accordingly, this factor weighs against release.

C.    History and Characteristics of Defendant

The Government argues Defendant's behavior in the instant offense reflects a pattern of violence against his partner. (ECF No. 25 at 11.) The Government notes Defendant's criminal history includes at least three prior arrests for domestic violence, one arrest for attempting to prevent a victim report, and a felony conviction for possession of marijuana for sale. (*Id.*) The Government contends Defendant is an active member of the Hells Angels outlaw motorcycle club, "a group known for violence and criminal activity." (*Id.*) The Government also states in a different section of its brief that "Victim-1 reported that during past 'episodes' of violence and destructive behavior, [Defendant] grabbed her by the neck and lifted her up to the point of choking, shattered her car window, took an axe to the door of her vehicle, and broke several doors on the property." (*Id.* at 7.)

In light of the foregoing and Defendant's non-opposition to the instant motion, the Court agrees this factor weighs heavily against release.

D.    Danger to the Community

The Government argues Defendant's profile is troubling and the Ninth Circuit has recognized that responding officers to domestic violence calls are placed in considerable risk due to the nature of the events they may confront. (*Id.* at 12 (citing *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005)).) The Government further argues that requiring the Court's Pretrial Services Officers to carefully police an individual like Defendant presents them with "an untenable and dangerous task that does nothing to protect [Defendant's] victim or the public." (*Id.* at 12–13.) The Government contends there are multiple concerns regarding Victim-1's

6

declaration submitted to Judge Riordan (ECF No. 19-1) — namely, that she has a strong bias in favor of shading the facts of the instant offense and Defendant's past conduct to help him get out of custody, there are factual problems in the declaration, and her claim that she is "secure" in her relationship with Defendant is consistent with behavior exhibited by other domestic violence victims.  (ECF No. 25 at 13.)

The Court need not address the problems with Victim-1's declaration because Defendant did not file an opposition to the instant motion.  It is further telling that Pretrial Services concludes in its Supplemental Report, dated May 29, 2026, that Defendant may pose a danger to the community because of the nature of the instant offense, he has at least three prior arrests for domestic violence, he has a prior arrest for attempt to prevent victim report, he has a prior felony conviction for possession of marijuana for sale, and he has known prior substance abuse history.  Although Pretrial Services offers some mitigating factors (he is willing to submit to random drug testing, he has no known active protective order, has no known mental health history, and is willing to abide by location monitoring or court-ordered conditions), the Court concludes they are not strong enough to outweigh danger to the community.  In light of the foregoing, the Court finds this factor also weighs against release.

Considering the Government's arguments and the § 3142(g) factors, the Court concludes the Government has ultimately shown by clear and convincing evidence that Defendant poses a danger to the community and that no condition or combination of conditions will reasonably assure the safety of the community.

> E.    Whether Defendant is a Flight Risk

The Government also asks this Court to continue to detain Defendant because he is a flight risk.  (ECF No. 25.)  The Court has reviewed Pretrial Services' Initial Pretrial Services Report, dated March 26, 2026, and the Supplemental Report, dated May 29, 2026.  The Initial Report notes that Defendant's mother and sister are unwilling to assist Defendant with bond.  The Supplemental Report states that Victim-1 is supportive of Defendant and is willing to assist him by cosigning a $20,000 unsecured bond.  The Court finds Victim-1 acting as a surety for Defendant is deeply troubling, especially considering Defendant's history of domestic violence

reports.  Further, the Supplemental Report concludes that Defendant may pose a risk of nonappearance because he has one known failure to appear charge, he has a substance abuse history, and a suitable bond package has not been identified at this time.  Although Pretrial Services offers some mitigating factors (Defendant has a residence available, he has immediate family, he is employed, he has no mental health history, he is willing not to obtain new travel documents, he is willing to submit to random drug testing, and he is willing to abide by court-ordered conditions), the Court concludes they are not nearly strong enough to outweigh the risk of nonappearance.

### IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Government's motion (ECF No. 25), REVOKES the magistrate judge's release order (ECF No. 22), and ORDERS Defendant to remain detained pending trial.

IT IS SO ORDERED.

Date: June 3, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE